UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DISNEY ENTERPRISES, INC.,

          Plaintiff/Counterclaim Defendant,

          -vs-

FINANZ ST. HONORÉ, B.V.,

          Defendant/Counterclaim Plaintiff.

Civil Action No. 1:13-cv-06338-NG-SMG

**ECF Case**

REVISED REDACTED VERSION

**MEMORANDUM OF LAW IN SUPPORT OF FINANZ ST. HONORÉ, B.V.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO
DISNEY ENTERPRISES INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

LOWENSTEIN SANDLER LLP
Amiad M. Kushner
1251 Avenue of the Americas
New York, New York 10020
(212) 262-6700
*Attorneys for Defendant/Counterclaim Plaintiff
Finanz St. Honoré, B.V.*

Dated:  December 7, 2016

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND .......................................................................................................................... 2

    A.    The Trademark Purchase Agreement ................................................................... 2

    B.    Icebox's Lawsuits Against Finanz, Dana, and Disney ......................................... 4

    C.    Finanz Indemnifies Disney for Costs Related to the Disney Litigation ................ 4

    D.    The Instant Action ................................................................................................. 6

SUMMARY JUDGMENT STANDARD ...................................................................................... 7

ARGUMENT ................................................................................................................................ 8

I.    SUMMARY JUDGMENT SHOULD BE GRANTED TO FINANZ ON ITS COUNTERCLAIM FOR DECLARATORY JUDGMENT .............................................. 8

    **A.**    The Plain, Unambiguous Language of the Purchase Agreement Limits the Indemnity Period to Six Years After Closing ........................................................ 8

    **B.**    Even if the Court Finds the Purchase Agreement Ambiguous, Summary Judgment Should be Granted to Finanz ............................................................... 12

        **1.**    The Extrinsic Evidence Does Not Support Disney's Interpretation of Section 3.4(d) ........................................................................... 13

        **2.**    Any Ambiguity in Section 3.4 Must Be Construed Against the Drafter, Disney ................................................................................ 15

II.    PARTIAL SUMMARY JUDGMENT SHOULD BE GRANTED TO FINANZ ON ITS BREACH OF CONTRACT COUNTERCLAIM ............................................... 16

CONCLUSION ........................................................................................................................... 18

# TABLE OF AUTHORITIES

**PAGES**

**CASES**

*151 West Assocs. v. Prinstiples Fabric Corp.*,
    460 N.E.2d 1344 (1984)...................................................................................15

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)............................................................................................7

*Bobrow Palumbo Sales, Inc. v. Boran-Nutone, LLC*,
    549 F. Supp. 2d 249 (E.D.N.Y. 2008) ...........................................................16

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)............................................................................................7

*Davis v. Catsimatidis*,
    12 N.Y.S.3d 141, 143 (2d Dep't 2015)..........................................................10

*DDS Partners, LLC v. Celenza*,
    6 A.D.3d 347 (1st Dep't 2004) ........................................................................8

*Federal Ins. Co. v. American Home Assur. Co.*,
    639 F.3d 557 (2d Cir. 2011)...........................................................................12

*Fresh Del Monte Produce N.V. v. Eastbrook Caribe A.V.V.*,
    40 A.D.3d 415 (1st Dep't 2007) ...................................................................17

*Hooper Assocs. v. AGS Computers*,
    74 N.Y.2d 487 (1989) .....................................................................................10

*Interested Underwriters at Lloyds v. Ducor's Inc.*,
    103 A.D.2d 76 (1st Dep't 1984) ....................................................................16

*Jade Realty LLC v. Citigroup Commercial Mortgage Trust 2005-EMG*,
    83 A.D.3d 567 (1st Dep't 2011) *aff'd*, 20 N.Y.3d 881, 980 N.E.2d 945 (2012)....................12

*Jeffreys v. City of New York*,
    426 F.3d 549 (2d Cir. 2005)............................................................................7

*Leaseway of Cent. New York v. Climax Mfg. Co.*,
    81 A.D.2d 1038 *aff'd sub nom. Leaseway of Cent. New York v. Climax Mfg. Co.*, 54
    N.Y.2d 822 (1981) ...........................................................................................15

*Lipton v. Nature Co.*,
    71 F.3d 464 (2d Cir. 1995)..............................................................................7

*Masters v. 14-22 Leonard St. Assocs. LLC.*,
    11 A.D.3d 380 (1st Dep't 2004) ............................................................................8, 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ..............................................................................................7

*Mejia v. Trustee of Net Realty Holding Trust*,
    304 A.D.2d 627 (2d Dep't 2003) ....................................................................15, 16

*New York v. Panex Indus., Inc.*,
    No. 94-cv-0400E(F), 2001 WL 241791 (W.D.N.Y. Mar. 8, 2001), *amended sub nom.*
    *New York v. Panex Indus., Inc.*, 94-CV-0400E(F), 2001 WL 1823580 (W.D.N.Y.
    Dec. 10, 2001) ......................................................................................................10

*New York v. Panex Indus., Inc.*,
    41 F. App'x 516 (2d Cir. 2002) ............................................................................10

*NFL Enters. LLC v. Comcast Cable Commc'ns, LLC*,
    51 A.D.3d 52 (1st Dep't 2008) ..............................................................................11

*Olin Corp. v. Consol. Aluminum Corp.*,
    5. F.3d 10, 15 (2d Cir. 1993) ................................................................................10

*Russo v. Estée Lauder Corp.*,
    856 F. Supp. 2d 437 (E.D.N.Y. 2012) ..............................................................8, 12

*Schwartz v. Natwest Mkts., PLC*,
    No. 99 CIV. 11010(AGS), 2001 WL 1006727 (S.D.N.Y. Aug. 31, 2001) ....................12, 16

*Sievert v. Morlef Holding Co.*,
    214 A.D.2d 445 (2d Dep't 1997) ..........................................................................15

*Weissman v. Sinorm Deli*,
    88 N.Y.2d 437 (1996) ............................................................................................10

## Rules

Fed. R. Civ. P. 56 ........................................................................................................7

Local Rule 56.1 ............................................................................................................2

## Other Authorities

17A AM.Jur.2d *Contracts* § 280 (2004) ....................................................................11

Black's Law Dictionary (8th ed. 2004) ........................................................................16

Merriam-Webster Dictionary, *available at http://merriam-
    webster.com/dictionary/indemnify* ..................................................................16

Defendant/Counterclaim Plaintiff Finanz St. Honoré, B.V. ("Finanz") respectfully submits this memorandum of law in support of its motion for (1) summary judgment in favor of Finanz on its counterclaim for declaratory judgment, and (2) partial summary judgment in favor of Finanz on its counterclaim for breach of contract.

## PRELIMINARY STATEMENT

In this action, Plaintiff/Counterclaim Defendant Disney Enterprises Inc. ("Disney") asserts an indemnity claim under a Trademark Purchase Agreement that was negotiated and drafted by sophisticated commercial parties at arm's length. Disney's claim fails because the indemnity provision contains a plain and unambiguous time limit that cuts off Finanz's indemnity obligation at February 17, 2012. It is undisputed that the fees and costs at issue in this case were incurred *after* February 17, 2012. Thus the Court should grant summary judgment to Finanz on its counterclaim for a declaration confirming that it is not liable for any such fees and costs.

Disney's arguments cannot overcome the plain and unambiguous words of the contract:

- Disney's argument that the indemnity provision is a "claims made" provision (which allegedly requires Finanz to continue indemnifying Disney after February 17, 2012, if Disney asserted a claim before that date) has no basis in the text of the contract. Under New York law, the Court cannot alter the plain text of the contract by inserting conditions and provisos that the sophisticated parties chose not to include themselves. *See* Point I-A, *infra.*

- Disney's argument that a six year time limit on its indemnity right is "absurd" is meritless. There is nothing absurd about a time limit on indemnity obligations. The Court should enforce the plain terms that were agreed to by the sophisticated parties. *See* Point I-A, *infra.*

Even if the Court considers the contract to be ambiguous (which it is not) and looks to extrinsic evidence, the evidence does not support Disney's reading. Indeed, to the extent the

Court finds an ambiguity in the indemnity provision, it should construe the provision against the drafter, Disney. *See* Point I-B, *infra.*

The Court should also enter partial summary judgment for Finanz on liability with respect to Finanz's counterclaim for breach of contract. As the evidence makes clear, Disney required Finanz to pay for the attorneys' fees of its outside counsel at undiscounted rates. Finanz was effectively overbilled because it did not receive discounts that Disney itself received in the same case. By requiring Finanz to pay more costs than Disney itself was required to pay, Disney exceeded its indemnity rights and breached the Purchase Agreement. *See* Point II, *infra.*

For all of these reasons and as more fully explained below, the Court should: (1) grant summary judgment to Finanz on its counterclaim for declaratory judgment, and (2) grant partial summary judgment to Finanz on liability on its breach of contract counterclaim.

## BACKGROUND

### A.    The Trademark Purchase Agreement

On or about February 23, 2006, Disney and Finanz entered into the Trademark Purchase Agreement (the "Purchase Agreement"). (SOF at ¶ 1[1]; Ex. A[2]; Ex. B at 65:7-18 [Muhlheim Tr. Excerpts]). In the Purchase Agreement, Finanz sold certain trademark rights to Disney, including rights previously licensed to Icebox-Scoops, Inc. ("Icebox") pursuant to a separate license agreement (the "Icebox License") between Finanz and Icebox. (SOF at ¶ 1; Ex. A). The Icebox License was terminated on October 31, 2005, months before the Purchase Agreement was signed. (SOF at ¶ 2; Ex. C).

---

[1] Citations in the form of "SOF at ¶ __" refer to the accompanying Rule 56.1 Statement of Undisputed Facts, dated September 21, 2015.

[2] Citations in the form "Ex. __" refer to exhibits to the accompanying declaration of Amiad M. Kushner, dated September 21, 2015.

In Section 3.4 of the Purchase Agreement, Finanz agreed to indemnify Disney for fees and costs arising from any claims asserted by Icebox relating to the Icebox License, including claims related to the termination and assignment of the license (collectively, "Icebox Claims"). (Ex. A, Purchase Agreement § 3.4; SOF at ¶ 4).  In the negotiation of the Purchase Agreement, Disney (one of the most sophisticated companies in the world) was represented by the prominent national law firm Fitzpatrick, Cella, Harper & Scinto ("Fitzpatrick Cella").  Pasquale Razzano, Esq., a senior attorney at Fitzpatrick Cella with decades of experience, took a lead role in drafting the indemnity provision that became Section 3.4 of the Purchase Agreement.  (SOF at ¶ 8; Ex. D).

In Section 3.4, Finanz agreed to indemnify Disney with respect to Icebox Claims, *provided* that such indemnity would expire six years after the closing date of the Purchase Agreement.  Section 3.4 provided in relevant part:

> 3.4. Ice Box License--Indemnity.
> . . .
> (c) [Finanz] agrees to indemnify and hold [Disney] harmless, fully and without limitation except as may otherwise be stated in this Agreement, from any claims, actions, demands, liabilities, damages or costs asserted by Ice Box, Inc. against [Disney] or [Finanz] and for which [Disney] may become responsible, whether or not such claims or actions be rightfully or wrongly brought or filed, arising out of the Ice Box License, [Finanz's] acts in terminating the Icebox License, the assignment of the Icebox License to [Disney], and/or any act by [Disney] or [Finanz] in negotiating this agreement or the consummation thereof.
>
> (d) *This indemnity shall extend from the date of Closing for six years thereafter*.
>
> (e) In case any demand is made or action filed by Ice Box against [Disney] which triggers [Disney's] rights under *the indemnity as stated in this Section 3.4*, [Disney] shall be entitled at its sole discretion to employ an attorney of [Disney's] own selection to appear and defend [Disney] at the expense of the [Finanz]. . . .[].

(Ex. A, Purchase Agreement §§ 3.4(c) – (e) (emphasis added)).  In Section 3.4(g) of the Purchase Agreement, Finanz agreed to indemnify Disney for fees and costs related to any action by Icebox "subject to this indemnity."  (Ex. A, Purchase Agreement §§ 3.4(g)).

### B.    Icebox's Lawsuits Against Finanz, Dana, and Disney

On February 8, 2007, Icebox sued Finanz and its affiliate Dana Classic Fragrances, Inc. ("Dana") in this Court.  (*Icebox-Scoops, Inc. v. Finanz St. Honoré, B.V., and Dana Classic Fragrances, Inc.*, 07 Civ. 0544, the "Finanz Litigation") (SOF at ¶ 11).  The suit is based on Finanz's allegedly improper termination of the Icebox License and subsequent sale to Disney of trademark rights that previously were licensed to Icebox.  (*Id.*).

On February 1, 2010, Icebox brought an action in this Court against Disney and its parent The Walt Disney Company, alleging various claims based on Finanz's termination of the Icebox Licenses and subsequent sale of the licensed trademarks to Disney.  (*Icebox-Scoops, Inc. v. Disney Enterprises, Inc. and The Walt Disney Company*, 10 Civ. 0421, the "Disney Litigation"). (SOF at ¶ 12).  On February 8, 2010, Disney sent Finanz written notice of the Disney Litigation. (SOF at ¶ 14; Ex. E).  The Disney Litigation was later consolidated with the Finanz Litigation for discovery purposes.  (SOF at ¶ 13; Disney Litigation, Dkt. No. 22).  Fitzpatrick Cella represented Disney in connection with these litigations.  (SOF at ¶ 13, Disney Litigation, Dkt. No. 12).

On March 30, 2012, this Court dismissed Icebox's claims against Disney in the Disney Litigation.  (Disney Litigation, Dkt. No. 31).  Icebox appealed to the Second Circuit.  (SOF at ¶ 15).  On April 15, 2013, the Second Circuit affirmed the dismissal in a summary order.  (*Id.*, Disney Litigation, Dkt. No. 37).

### C.    Finanz Indemnifies Disney for Costs Related to the Disney Litigation

Pursuant to Section 3.4(d) of the Purchase Agreement, Finanz paid the invoices of Disney's counsel, Fitzpatrick Cella, for work performed within six years of the closing.  (SOF at

¶ 17).  During that time period, Fitzpatrick Cella submitted its invoices for work related to the Disney Litigation directly to Finanz's outside counsel for payment.  (SOF at ¶ 16; Ex. F).  Finanz paid every invoice it received for services rendered until expiration of the indemnity period.  (*See* Ex. G at 60:18-22 [Razzano Tr. Excerpts] ("I believe that all of the invoices that were sent to Charles Michael [outside counsel for Finanz] were paid without objection.").

After the termination of the indemnity period, Finanz declined to pay Fitzpatrick Cella's invoices.  (SOF at ¶ 18; Ex. H at DEI000717; Ex. I at DEI000770).  Fitzpatrick Cella therefore looked to Disney for payment for this work.  (*See* Ex. J at 53:15-25 [Quinn Tr. Excerpts] ("I do know that Disney started to receive bills once Finanz stopped paying, and then Disney started paying the bills.").  However, as was later revealed during discovery in this action, the invoices that Fitzpatrick Cella submitted to Disney did not contain the same billing rates as invoices that Fitzpatrick Cella submitted to Finanz for the very same case.  (SOF at ¶ 20).  Rather, Fitzpatrick Cella provided Disney with discounts that were not afforded to Finanz.  (SOF at ¶¶ 19-20).  In other words, Finanz did not receive the benefits of discounts that Disney itself received from its counsel for work in the same case.

For example, on August 14, 2012, Mr. Razzano sent Finanz's outside counsel Invoice No. 745342, dated August 8, 2012.  (Ex. N).  Fitzpatrick Cella also sent Disney Invoice No. 745342, dated August 8, 2012.  (Ex. M).  Both invoices contained the same entries for the same dates.  (*Compare* Ex. M at DEI00830-832 *with* Ex. N at FINANZ00229-31).  However, Invoice No. 745342 directed to Finanz had higher charges for attorney and paralegal time than Invoice. No. 745342 directed to Disney.  (*Id.*)  For instance, Finanz was billed ▮▮▮▮ for two hours of ▮▮▮▮▮▮▮▮▮▮ time on June 19, 2012, whereas Disney was only billed ▮▮▮▮ for two hours of ▮▮▮▮▮▮▮▮ time on June 19, 2012.  (*Compare* Ex. N at FINANZ00229 *with* Ex. M at

DEI00830).  Although the date, timekeeper, and hours invoiced were identical on the invoices sent to Finanz and Disney, Finanz was billed $9,889.06 for Fitzpatrick Cella's total fees and disbursements whereas Disney was billed $9,542.82.  (*Compare* Ex. N at FINANZ00231 *with* Ex. M at DEI00832).

### D.    The Instant Action

In this litigation, Disney seeks to recover (1) $357,450 in legal fees and costs allegedly incurred between April 2012 (*i.e.*, after the District Court dismissed the Disney Litigation) and February 2013, and (2) its attorneys' fees and costs incurred in this action.  Disney has asserted three causes of action: (1) a breach of contract claim, which alleges that Finanz breached its indemnity obligations under the Purchase Agreement by not reimbursing Disney for fees and costs related to Icebox Claims, *see* Amended Compl. ¶¶ 21-25[3], (2) a claim for declaratory judgment, which seeks a declaration that under the Purchase Agreement Finanz is required to pay "any future attorneys' fees and costs" related to Icebox Claims, Amended Compl. ¶¶ 26-28, and (3) a claim under Section 3.4(g) of the Purchase Agreement for attorneys' fees and costs incurred in this action, *see* Amended Compl. ¶¶ 29-31.

Finanz has asserted a counterclaim for declaratory judgment, which seeks a declaration that any fees and costs related to Icebox Claims that Disney incurred after February 17, 2012 are not indemnifiable under the express terms of the Purchase Agreement.  Finanz has also asserted a counterclaim for breach of contract, which seeks to recover amounts paid by Finanz to Disney's outside counsel that did not include discounts that Disney customarily received from that counsel.  Counterclaims ¶¶ 24-26.[4]  Finanz contends that as an indemnitor, it is only responsible

---

[3] Cites in the form of "Amended Compl. ¶ __" refer to the February 2, 2015 Amended Complaint filed in this action, Dkt. No. 36.

[4] Cites in the form of "Counterclaims ¶ __" refer to April 21, 2015 Amended Answer to Amended Complaint, Affirmative Defenses, and Counterclaims of Defendant Finanz St. Honoré, B.V. filed in this action, Dkt. No. 40.

for standing in the shoes of the indemnitee (Disney), and should not be placed in a worse position.  Counterclaims ¶¶ 27-30.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted if the movant satisfies its burden of demonstrating that the pleadings, depositions, answers to interrogatories and affidavits, if any, show that there are no genuine issues of material fact for adjudication.  Fed. R. Civ. P. 56(c) ("there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law."); *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005); *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995).  To withstand a summary judgment motion, the non-moving party must come forward with "specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis added).  When considering a summary judgment motion, the District "[J]udge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether this is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

An issue is considered genuine *only* if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.  Thus, when no rational jury could find in favor of the non-moving party because the evidence to support its case is so slight, there is no genuine issue of material fact and an award of summary judgment is proper.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## ARGUMENT

### I.    SUMMARY JUDGMENT SHOULD BE GRANTED TO FINANZ ON ITS COUNTERCLAIM FOR DECLARATORY JUDGMENT

#### A.    The Plain, Unambiguous Language of the Purchase Agreement Limits the Indemnity Period to Six Years After Closing

Under New York law, which governs the Purchase Agreement, "[i]t is well settled that a written agreement which is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Masters v. 14-22 Leonard St. Assocs. LLC.*, 11 A.D.3d 380, 381 (1st Dep't 2004); *Russo v. Estée Lauder Corp.*, 856 F. Supp. 2d 437, 461 (E.D.N.Y. 2012) ("It is a court's task to enforce a clear and complete written agreement according to the plain meaning of terms, without looking to extrinsic evidence to create ambiguities not present on the face of the document."); *DDS Partners, LLC v. Celenza*, 6 A.D.3d 347, 348 (1st Dep't 2004) ("[W]hen interpreting a contract, words and phrases used by the parties must be given their plain meaning[.]").  Moreover, under New York law "a court may not, under the guise of interpreting a contract, add or omit terms or distort the meaning of those used to fashion a new contract on behalf of the parties." *Masters*, 11 A.D.3d at 381-82 (internal quotation omitted).

Here, the plain language of the Purchase Agreement provides that Finanz's "indemnity" to Disney for Icebox Claims extends for a six year period after closing:  "This indemnity shall extend from the date of Closing *for six years thereafter*."  (Ex. A, Purchase Agreement § 3.4(d)) (emphasis added).  Section 2.1 of the Purchase Agreement defines the Closing Date as a date not "later than February 17, 2006".  (Ex. A, Purchase Agreement § 2.1).  Therefore, Finanz's duty to indemnify Disney terminated on February 17, 2012, six years after the Closing date.  There is no dispute that Finanz met its indemnity obligations until February 17, 2012.  Accordingly, summary judgment should be granted to Finanz on its counterclaim for a declaration that it is has

no obligation to reimburse Disney for fees and costs that *post-date* February 17, 2012.  For the same reason, Disney's motion for partial summary judgment on its affirmative claims should be denied in its entirety, because all of Disney's claims in this action are based on the flawed premise that Finanz's indemnity obligations continued past February 17, 2012.

In attempt to persuade the Court that it should overlook the plain language, Disney has asserted two principal arguments, each of which is meritless.[5]

<u>First</u>, Disney has asserted that Section 3.4(d) should be read as a "claims made" provision, *i.e.*, that so long as an indemnity *claim* is asserted by February 17, 2012, all fees and expenses related to that claim are covered under the indemnity (regardless of whether such fees and expenses were incurred after February 17, 2012).  Under Disney's theory, if by February 17, 2012, Finanz was on notice of Disney's *claim* for indemnification with respect to its fees and costs in the Disney Litigation, then Finanz must continue to indemnify Disney for any fees and costs related to the Disney Litigation forever (including fees and costs incurred after February 17, 2012).

Disney's argument fails because it has no textual support in Section 3.4(d), which makes no reference to "claims."  (Ex. A, Purchase Agreement § 3.4(d)).  If the parties intended a "claims made" exception to the six year time limit in Section 3.4(d), they would have expressly indicated that in the Purchase Agreement.  They did not.  Reading in a "claims made" exception not only has no basis in the contract language, but it also ignores the well-established principle of

---

[5] In Disney's pre-motion letter, dated April 28, 2015, filed in this action (Dkt. No. 42) the "<u>Letter</u>"), Disney indicated that it would move for partial summary judgment against Finanz on liability of its breach of contract claim and for full summary judgment on Finanz's counterclaims.  (Ex. O).  In the Letter, Disney argued that Section 3.4(d) of the Purchase Agreement is essentially a claims-made provision, *i.e.*, that so long as a claim is brought within six years of closing, all fees and expenses related to that claim are covered without any time limit.  (*Id.*)  Disney also argued that Finanz's interpretation of Section 3.4(d) of the Purchase Agreement would lead to "absurd" and "commercially unreasonable" results.  (*Id.*).  Further, Disney argued that Finanz was not overbilled for Fitzpatrick Cella's services rendered to Disney in the Disney Litigation.  (*Id.*).  As the Court has ordered the parties submit simultaneous opening and reply briefs for partial summary judgment, Finanz addresses and responds to Disney's anticipated arguments as presented in the Letter.

New York law that indemnity provisions must be strictly construed to avoid expanding indemnity obligations.  *See Weissman v. Sinorm Deli*, 88 N.Y.2d 437, 446 (1996) (finding that an indemnity agreement must be "strictly construed to avoid reading into it a duty which the parties did not intend to be assumed"); *Davis v. Catsimatidis*, 12 N.Y.S.3d 141, 143 (2d Dep't 2015) ("Indemnification provisions are strictly construed, and the right to contractual indemnification depends upon the specific language of the contract."); *Hooper Assoscs. v. AGS Computers*, 74 N.Y.2d 487, 491 (1989) ("When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into a duty which the parties did not intend to be assumed."); *see also Olin Corp. v. Consol. Aluminum Corp.*, 5. F.3d 10, 15 (2d Cir. 1993) ("a court cannot find a duty to indemnify absent a manifestation of a clear and unmistakable intent to indemnify.").[6]

Indeed, sophisticated parties such as Disney (and Disney's prominent outside counsel, Fitzpatrick Cella) understand how to craft indemnity provisions that put time limits on indemnity obligations and provide for exceptions for claims made within such time limits.[7]  Where, as here, the parties did not draft an indemnity provision as a "claims made" provision, "a court may not, under the guise of interpreting a contract, add or omit terms or distort the meaning of those used to fashion a new contract on behalf of the parties."  *Masters*, 11 A.D.3d at 381-82 (internal

---

[6] By contrast, Section 3.4(c) *does* mention "claims," but does not contain any time limit.  *See* (Ex. A, Purchase Agreement §3.4(c) (providing that Disney will be indemnified "without limitation *except* as may otherwise be stated in this Agreement, from any claims, actions, demands, liabilities, damages or costs asserted by Ice Box, Inc. . . .").  Section 3.4(d) immediately follows and clearly sets out a six year time limitation on the indemnity.  Read together, 3.4(c) and (d) provide a straight forward schema – Disney is indemnified "without limitation" during the six year time period after the Purchase Agreement closed, and then the indemnity terminates.

[7] *See, e.g., New York v. Panex Indus., Inc.*, No. 94-cv-0400E(F), 2001 WL 241791 (W.D.N.Y. Mar. 8, 2001), *amended sub nom. New York v. Panex Indus., Inc.*, 94-CV-0400E(F), 2001 WL 1823580 (W.D.N.Y. Dec. 10, 2001) and *aff'd sub nom. New York v. Panex Indus., Inc.*, 41 F. App'x 516 (2d Cir. 2002) (indemnity agreement provided that: "the above indemnification shall extend for a period of two years after the Closing Date, provided, however, that *the foregoing two-year limitation shall not apply to* (1) *claims of which* [the indemnitee] *has given* [indemnitor] *specific written notice within said two-year period*") (emphasis added).

citation omitted).  Disney's "interpretation" therefore fails as a matter of well-established New York contract law.

Further, if Disney's reading of Section 3.4(d) is correct – that so long as a claim is brought within six years of closing, all fees and expenses related to that claim are covered without any time limit – then there would have been no reason for the parties to carve out Icebox Claims from Section 9.2(a) and create a separate indemnity provision in Section 3.4 to deal with Icebox Claims.  In Section 9.2(a) of the Purchase Agreement, Finanz agreed to indemnify Disney without any time limit for costs incurred by Disney resulting from claims against Finanz *other than Icebox Claims*.  (Ex. A, Purchase Agreement § 9.2(a)).  Under New York law, "[t]he use of different terms in the same agreement *strongly* implies that the terms are to be accorded different meanings."  *NFL Enters. LLC v. Comcast Cable Commc'ns, LLC*, 51 A.D.3d 52, 60-61 (1st Dep't 2008) (internal citation omitted) (emphasis added).

<u>Second</u>, Disney contends that Finanz's reading of the Section 3.4(d) indemnity provision limiting Finanz's obligation to indemnify to six years after the Closing Dates leads to "absurd" and "commercially unreasonable" results, because a claim brought one day after the expiration of the six year time period would not be indemnified.  (Ex. O).

Disney's argument ignores the fact that sophisticated parties may agree to time limits or conditions on contractual rights, including indemnity obligations.  *See* 17A AM.Jur.2d *Contracts* § 280 (2004) ("sophisticated parties may contractually limit future remedies") (footnote omitted).  Disney's argument is nothing more than an attempt to have the Court decline to enforce a contractual time limit because (according to Disney's current litigation position) the time limit does not make business sense.   Contrary to Disney's self-serving argument that this time limit is "absurd," under New York law, "[t]he fact that contractual terms are 'novel or unconventional'

-11-

does not bring them or the contract in question to the level of absurdity." *Jade Realty LLC v. Citigroup Commercial Mortgage Trust 2005-EMG*, 83 A.D.3d 567, 568 (1st Dep't 2011) *aff'd*, 20 N.Y.3d 881, 980 N.E.2d 945 (2012) (citation omitted). Indeed, "[t]his rule has even greater force where, as here, 'the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length.'" *Id.*

### B. Even if the Court Finds the Purchase Agreement Ambiguous, Summary Judgment Should be Granted to Finanz

A contract provision is ambiguous where it is "reasonably or fairly susceptible of different interpretations or may have two or more different meanings". *Russo*, 856 F. Supp. 2d at 461 (internal quotation marks omitted). "Where there is ambiguity in the language of a written agreement, the Court may resort to extrinsic evidence to determine the meaning of the provision in question." *Schwartz v. Natwest Mkts., PLC*, No. 99 CIV. 11010(AGS), 2001 WL 1006727, at *6 (S.D.N.Y. Aug. 31, 2001). "However, mere assertion by a party that contract language means something other than what is clear when read in conjunction with the whole contract is not enough to create an ambiguity sufficient to raise a triable issue of fact." *Id.* (internal quotation omitted); *Id.* at *6 ("the language of a contract is not made ambiguous simply because the parties urge different interpretations.") (internal quotation omitted). Where a contract is ambiguous, "summary judgment can be granted if the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language." *Federal Ins. Co. v. American Home Assur. Co.*, 639 F.3d 557, 567 (2d Cir. 2011) (internal quotation omitted). Whether or not a contract is ambiguous is a question of law that must be deiced by the court, however, the "court should not find the language ambiguous on the basis of the interpretation urged by one party, where the interpretation would strain the contract language beyond its reasonable and ordinary meaning." *Id.* at 568 (internal quotation omitted).

-12-

Here, for the reasons discussed above, the Purchase Agreement is unambiguous. Accordingly, extrinsic evidence cannot be considered in interpreting the agreement. However, as explained further below, even if the Court were to find the agreement ambiguous, the Court should still adopt Finanz's interpretation of the contract.

### 1. The Extrinsic Evidence Does Not Support Disney's Interpretation of Section 3.4(d)

None of the extrinsic evidence supports Disney's contention that Section 3.4(d) was intended to require Finanz to indemnify Disney for costs related to Icebox Claims without any time limit, so long as Disney asserted the claim prior to February 17, 2012. First, there is no contemporaneous written documentation that supports Disney's interpretation of Section 3.4(d).

On January 20, 2006, just over a month before the Purchase Agreement was executed, Disney's outside counsel proposed draft language for what would become Section 3.4. (Ex. D). In a letter from Disney's outside counsel Mr. Razzano to James Alterbaum, Finanz's counsel, Mr. Razzano proposed the following language: "The indemnity herein provided will extend from the date of this agreement for six years." (Ex. D at JA014). By early February, the parties had agreed on the language of Section 3.4(d) that is reflected in the Purchase Agreement. (Ex. P at FINANZ00102). There is no contemporaneous documentation to suggest that the parties intended the section to mean anything other than the plain language. If Disney was dissatisfied with the plain language of Section 3.4(d) it certainly could have addressed it with Finanz as it did that same day with regards to the language in Sections 3.4(e), (f), and (g). (Ex. Q ("The language that was added to the latest draft in section 3.4(e), (f) and (g) is not acceptable to Disney."). There is no contemporaneous documentation Disney can point to that supports its reading of Section 3.4(d).

-13-

Second, there is also no evidence of contemporaneous oral communications that supports Disney's interpretation of 3.4(d).  For example, Mei-Lan Stark, former executive counsel for Disney, testified that an "all-hands call" was the only instance where she could recall speaking to someone at Finanz during the negotiation of the Purchase Agreement and was the only call she remembered having with respect to Section 3.4(d).  (*See* Ex. R at 21:10-12, 50:13-22, 53:8-20 [Stark Tr. Excerpts].  However, the "all-hands call" most likely took place between December 12th and December 21st, 2005, at least one month before there was a draft of any language relating to the Icebox indemnity.  (*See* Ex. R at 23:25-24:15, 32:2-9 [Stark Tr. Excerpts]; Ex. S at FINANAZ00054 (December 12, 2005 email from E. Muhlheim to I. Cohen and G. Zamarelli suggesting an "all-hands conference to discuss the open points"); Ex. T at FINANZ00074 (December 21, 2005 email from M. Stark to E. Muhlheim and G. Zamarelli referring to "our call last week regarding the current status of Tinkerbell, Inc.").  Further, Ms. Stark testified that she did not develop an understanding of the Section 3.4(d) until after Mr. Razzano's draft in the January 20, 2006 letter.  (*See* Ex. R at 47:24-49:12 [Stark Tr. Excerpts]).

Neither Eric Muhlheim, former Senior Vice President of Strategy and Business Development for Disney Consumer Products, nor Ms. Stark could recall any discussions about the language of Section 3.4(d) on the "all-hands call" or any other call.  (*See* Ex. B at 56:11-57:10 [Muhlheim Tr. Except] ("Q.  Just so I'm clear, you don't recall any discussions about the particular language in 3.4D; is that right?  A.  No, I don't.); Ex. R at 46:7-47:13 [Stark Tr. Excepts] ("Q.  Specifically, 3.4D.  I will read from text.  'This indemnity shall extend from the date of closing for six years thereafter.'  Ms. Stark, do you recall this language being discussed on the all-hands call that you described earlier.  A.  I do not remember that specific language being discussed on the call.  … Q.  Do you recall discussing 3.4D in any way, shape, or form, on

the all-hands call or otherwise, with any representative of Finanz or anyone you believe to be with Finanz?  A.  No.")).  Likewise, Mr. Razzano, the drafter of Section 3.4(d), does not believe he discussed the specific language with Mr. Alterbaum in the January 20, 2006 draft.  (Ex. G at 39:5-40:12 [Razzano Tr. Excerpts]).

Accordingly, the extrinsic evidence does not support Disney's interpretation of Section 3.4(d).

## 2.    Any Ambiguity in Section 3.4 Must Be Construed Against the Drafter, Disney

Under New York law, "indemnification provisions of a contract must be strictly construed against the drafter."  *Mejia v. Trustee of Net Realty Holding Trust*, 304 A.D.2d 627, 628 (2d Dep't 2003) (construing an indemnification agreement against the drafter where the extrinsic evidence failed to explain the ambiguity); *Sievert v. Morlef Holding Co.*, 214 A.D.2d 445, 446 (2d Dep't 1997) (construing ambiguity in an indemnification agreement against the drafter and granting summary judgment dismissing indemnification claim); *Leaseway of Cent. New York v. Climax Mfg. Co.*, 81 A.D.2d 1038, 1038 (4th Dep't) *aff'd sub nom. Leaseway of Cent. New York v. Climax Mfg. Co.*, 54 N.Y.2d 822 (1981) ("Insofar as there may be ambiguity, however, it must be resolved against plaintiff who prepared the contract.").  "It has long been the rule that ambiguities in a contractual instrument will be resolved *contra proferentem*, against the party who prepared or presented it."  *151 West Assocs. v. Prinstiples Fabric Corp.*, 460 N.E.2d 1344, 1345 (1984).

Here, Disney qualifies as the drafter of Section 3.4(d) because its counsel proposed the draft language that became that section.  *See, supra*, at I.B.2.  As the party that first memorialized the section in writing, "it had the opportunity in the first instance to eliminate any ambiguity."  *Interested Underwriters at Lloyds v. Ducor's Inc.*, 103 A.D.2d 76, 79 (1st Dep't

1984); (*see* Ex. D; Ex. G at 39:5-40:12 [Razzano Tr. Excerpts]).  As the drafter of 3.4(d), Disney was chargeable with making Section 3.4(d) clear and unambiguous.  However, Disney drafted a provision that terminates Finanz's indemnification obligations after six years, notwithstanding Disney's current interpretation to the contrary.  Accordingly, in the absence of dispositive extrinsic evidence, Section 3.4(d) must be construed against Disney as the drafter.  *See Meja*, 304 A.D.2d at 628; *Schwartz*, 2001 WL 1006727, at *6 ("where extrinsic evidence is not dispositive, the ambiguity must be resolved *contra proferentem* against the party that drafted the provision").

## II.    PARTIAL SUMMARY JUDGMENT SHOULD BE GRANTED TO FINANZ ON ITS BREACH OF CONTRACT COUNTERCLAIM

Finanz is seeking partial summary judgment on liability as to its counterclaim for breach of contract.  Finanz asserts that Disney breached the Purchase Agreement by requiring Finanz to pay for its attorneys' fees at undiscounted rates.  Because Finanz did not receive discounts that Disney received from its outside counsel for work in the same case, Finanz was effectively overbilled.

The term "indemnify" means "to make compensation to for *incurred* hurt, loss or damage," or "[t]o reimburse another for a loss *suffered*".  *Bobrow Palumbo Sales, Inc. v. Boran-Nutone, LLC*, 549 F. Supp. 2d 249, 272 (E.D.N.Y. 2008) (quoting Merriam-Webster Dictionary, *available at http://merriam-webster.com/dictionary/indemnify* and Black's Law Dictionary (8th ed. 2004) (emphasis added).  Accordingly, under Section 3.4 of the Purchase Agreement, Disney is entitled (at most) to indemnification for costs that Disney actually incurred in defending the Disney Litigation.  There is no basis in the Purchase Agreement for Disney to make Finanz responsible for fees that exceed what Disney would have itself paid if was not indemnified by Finanz.

Disney breached the Purchase Agreement by causing Finanz to be charged (and pay) more than Disney would have incurred in indemnifiable fees and costs related to the Icebox Claims.  (*Compare* Ex. N [Quinn Ex. 7] (Invoice 745342 sent to Finanz in the amount of $9,889.06) *with* Ex. M [Quinn Ex. 6] (Invoice 745342 sent to Disney in the amount of $9,542.82).  For example, Finanz was charged for research services by Fitzpatrick Cella for which Disney would never be charged.  (*See* Ex. J at 61:16-62:4 [Quinn Tr. Excerpts] ("Q.  Are there any charges you're aware of that Disney legal categorically refuses to pay for?   A.  Categorically refuses to pay for?  Research charges, for research subscription services is the only one I'm aware of.  Q.  That's not negotiated on a firm-by-firm basis?  A.  I don't believe so."); Ex. K at DEI001146 ("Expenses paid less charges for Online Research; Postage; & Scanning, as Disney does not pay for these types of expenses."); Ex. L at DEI001133 ("Invoice paid less online research charges, as Disney does not pay for this type of expense.")).  Because Finanz paid costs for which Disney would not have been responsible had Fitzpatrick Cella billed Disney directly, Finanz's is entitled to partial summary judgment on liability as to its breach of contract counterclaim.  *See e.g. Fresh Del Monte Produce N.V. v. Eastbrook Caribe A.V.V.*, 40 A.D.3d 415, 418 (1st Dep't 2007) (holding that indemnification provision must be construed strictly to cover only actual or realized loss or harm).

## CONCLUSION

For the reasons set forth above, Finanz respectfully requests that the Court issued an Order: (1) granting summary judgment to Finanz on its counterclaim for declaratory judgment, and (2) granting partial summary judgment to Finanz on liability on its breach of contract counterclaim.


Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

Dated:  December 7, 2016                By: /s/ Amiad M. Kushner
                                        Amiad M. Kushner
                                        1251 Avenue of the Americas
                                        New York, New York 10020
                                        (212) 262-6700
                                        akushner@lowenstein.com

                                        *Attorneys for Defendant/Counterclaim
                                        Plaintiff Finanz St. Honoré, B.V*