UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DISNEY ENTERPRISES, INC.,

               **Plaintiff,**

  - v. -

FINANZ ST. HONORE, B.V.,

               **Defendant.**

-----------------------------------------------------------x

**OPINION & ORDER**

13-cv-6338 (NG) (SMG)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 08 2017 ★
BROOKLYN OFFICE

**GERSHON, United States District Judge:**

Plaintiff Disney Enterprises, Inc. ("Disney") seeks an order of attachment against defendant Finanz St. Honore B.V. ("Finanz") pursuant to Federal Rule of Civil Procedure 64 and New York Civil Practice Law and Rules ("CPLR") § 6210. For the reasons set forth below, Disney's motion for an attachment is granted.

## I.    Background

Because I assume the parties' familiarity with the underlying facts, I provide only a brief overview of the litigation and a description of the facts pertinent to the current dispute. In 2005, Disney was preparing to launch its "Fairies" line of consumer products using Tinker Bell, the iconic Disney fairy, as part of the branding. Disney already owned the trademark "Tinker Bell," but did not own the trademarks "Tinkerbell," "Tink," or the "Big T" (collectively, the "Trademarks"). In 2006, Disney purchased the Trademarks from Finanz and what ensued was a series of litigations, including this case, which began in 2013.

As part of the purchase agreement for the Trademarks, Disney contracted for two indemnification clauses from Finanz to protect itself against any suit brought by Ice Box, Inc. ("Ice Box")— a non-party to the contract—in relation to the Trademarks. The first indemnification

clause required Finanz to indemnify Disney for its attorneys' fees in defending any suit brought by Ice Box. In the event Finanz failed to fulfill this indemnification obligation, the second indemnification clause entitled Disney to the attorneys' fees and costs it would incur in bringing an action to enforce Finanz's obligations under the first indemnification clause.

Ice Box did sue Disney in 2010, thus triggering Finanz's indemnification obligations ("Ice Box litigation"). On November 15, 2013, Disney filed this action alleging that Finanz failed to fulfill its indemnification obligations as to Disney's defense of the Ice Box litigation. Approximately two years later, in October of 2015, after extensive discovery and multiple depositions, the parties filed motions for summary judgment. Disney sought partial summary judgment on liability as to its breach of contract claims, arguing that it is entitled to both its attorneys' fees in the Ice Box litigation that Finanz did not indemnify and its attorneys' fees in this action, which it undertook to enforce Finanz's indemnification obligation. Finanz moved for summary judgment as to its breach of contract counterclaim, arguing that, as to the expenses for which it had paid Disney in the Ice Box litigation, it overpaid Disney. On December 5, 2016, I granted Disney's motion for partial summary judgment in its entirety and dismissed Finanz's counterclaim. *See* Dkt. No. 62. Accordingly, although the amount of attorneys' fees Disney is entitled to in both the Ice Box litigation and the instant litigation remains open, Disney has already prevailed on the merits.

At a conference on January 11, 2017, Finanz indicated that it intended to challenge the reasonableness of Disney's attorneys' fees in both this action and the Ice Box litigation, but it first needed discovery as to the invoices of Disney's lawyers, Schwartz & Thomashower LLP. The parties represented that they would try to resolve their disputes, but Finanz soon became unresponsive and ceased providing any guidance to its counsel Lowenstein Sandler LLP

2

("Lowenstein") as to how to proceed in this litigation. Because of this unresponsiveness and Finanz's failure to pay Lowenstein's legal fees, Lowenstein moved to withdraw as counsel on March 20, 2017. That motion is not yet fully briefed, but Disney has already made clear that it does not challenge Lowenstein's showing that Finanz has become unresponsive and stopped paying its fees.

On April 26, 2017, Disney moved *ex parte* to attach Finanz's assets. I denied this *ex parte* motion without prejudice to a motion made on notice. On April 28, 2017, Lowenstein informed me that it had notified Finanz by email of the pending application for an attachment and received no response. On May 1, 2017, I held a hearing on the motion, which Disney and Lowenstein attended. Lowenstein informed me that it still had not received any communication from Finanz. At the hearing, I granted Disney's application for an attachment and placed an order on the docket that day. *See* Dkt. No. 78 ("Attachment Order"). At the hearing, I indicated that an opinion would follow.

## II. Discussion

### A. Requirements to Obtain an Attachment

In federal court, attachment is available "under the law of the state where the court is located." Fed. R. Civ. P. 64. In New York, CPLR Section 6212 identifies the requirements for obtaining an attachment: (1) a cause of action; (2) a probability that the plaintiff will succeed on the merits; (3) the existence of a ground for attachment under CPLR Section 6201; and (4) that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff. As to CPLR Section 6201, an order of attachment may be granted, *inter alia*, when "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." In addition to satisfying these statutory requirements, as the Second Circuit, in

3

*Capital Ventures v. Repub. Of Argentina*, 443 F.3d 214, 221-22 (2d Cir. 2006), made clear, the party seeking an attachment must show the existence of one of the two purposes of an attachment, either the need to secure a judgment or to obtain jurisdiction. Lastly, plaintiff must provide an undertaking in an amount to be determined by the court, but not less than $500. CPLR § 6212(b).

Disney has met all of the requirements listed above: Finanz is a foreign corporation not qualified to do business in New York; there is a cause of action; Disney has already prevailed on the merits; and I have dismissed Finanz's counterclaim. With respect to damages, Finanz does not dispute that Disney actually paid $357,450.25 in attorneys' fees in the Ice Box litigation. Rather, it disputes only the reasonableness of these fees. Therefore, while it is possible Disney may not collect all of the fees it seeks, there can be no doubt that there will be a monetary judgment in some substantial amount. As to Disney's attorneys' fees in this action, Disney has represented to the court that it has spent approximately $350,000 thus far.[1]

Additionally, Disney's showing of the need for an attachment, as articulated in *Capital Ventures*, is persuasive. To show that Finanz is in a tenuous financial state, Disney offers the following facts: (1) Finanz filed a voluntary discontinuation of business in the Netherlands, which is where Finanz has its principal place of business; (2) Finanz stopped paying Lowenstein's legal fees; and (3) the United States Patent and Trademark Office ("USPTO") has deemed certain of Finanz's trademarks abandoned because of its unresponsiveness to inquiries from the USPTO. *See* Declaration of Rachel Schwartz in Support of [] Motion for an Order of Attachment, Exs. F, G, H. These facts allow one to draw the inference that Finanz is in a precarious financial state and that Disney may find it difficult to collect on the expected judgment. *See TAGC Mgmt., LLC v.*

---

[1] Based on the current record before me and the protracted nature of both this and the Ice Box litigation, Disney has a good faith basis for asserting its entitlement to these fees.

*Lehman*, 842 F. Supp. 2d 575, 586 (S.D.N.Y. 2012); *Intelligent Digital Systs., LLC v. Visual Mgmt. Systs., Inc.*, 683 F. Supp. 2d 278, 287 (E.D.N.Y. 2010); *Davila Pena v. Morgan*, 149 F. Supp. 2d 91, 93-94 (S.D.N.Y. 2001). In addition to these financial issues, Finanz has exhibited evasive conduct in this litigation since the January 11, 2017 conference. Since that time (which was shortly after I found it liable), Finanz: (1) stopped paying its attorney; (2) stopped communicating with its attorney, which has caused delay in this litigation; and (3) failed to respond to (*i.e.* not opposed) Disney's motion for an attachment. This evasiveness also supports the need for an attachment. *See Thornapple Assocs., Inc. v. Sahagen*, 2007 WL 747861, at *7 (S.D.N.Y. Mar. 12, 2007). In sum, Disney has made an ample showing of its need for an attachment to secure its judgment. Finanz's financial state seems precarious, its corporate relationships are obscure, and it has failed to respond to this motion to clarify its situation.

In its application, Disney seeks an attachment in the amount of $1,000,000 comprised of $357,450.25 in fees from the Ice Box litigation, approximately $350,000 in fees from this litigation, and a rough approximation of interest and fees. I conclude that the appropriate amount of the attachment is $700,000, which constitutes a reasonable, minimal estimate of the ultimate judgment.

### B.  Finanz's Assets Subject to Attachment

Disney seeks to attach all of Finanz's assets (including 34 trademarks Finanz owns) and any debt due or to become due to Finanz.[2] The trademarks include such famous, and presumably valuable, marks on perfume as Tabu and English Leather. As to the trademarks, "registered trade names or marks may not be validly assigned in gross. A sale of a trade name or mark divorced

---

[2] These 34 trademarks are identified in the Attachment Order.

from its goodwill is characterized as an 'assignment in gross.'" *Marshak v. Green*, 746 F.2d 927, 929 (2d Cir. 1984). In other words, there can be no forced sale of a trademark independent of the business with which the trademark is associated. This is because "[a] trade name or mark is merely a symbol of goodwill; it has no independent significance apart from the goodwill it symbolizes . . . . Use of the mark by the assignee in connection with a different goodwill and different product would result in a fraud on the purchasing public who reasonably assume that the mark signifies the same thing." *Id.*

But, while Disney cannot initiate a forced sale in gross of Finanz's trademarks, Disney can put a lien on the trademarks (*i.e.* attach them) so that, if they were ever sold along with the goodwill of the business, Disney could use the proceeds to satisfy the judgment in this case. *See Adams Apple Distrib. Co. v. Papeleras Reunidas, S.A.*, 773 F.2d 925, 931 (7th Cir. 1985); *Application of GE Comm. Fin. Bus. Prop. Corp. v. Hakakian*, 821 N.Y.S.2d 391, 394 (N.Y. Sup. Ct. 2006); *Cieslukowski v. Norton Motors Int'l, Inc.*, 2002 WL 31045846, at *5 (D. Minn. Sept. 10, 2002). Additionally, to the extent the trademarks produce royalties, those royalties are assets subject to attachment.

Therefore, I approve Disney's request to attach $700,000 worth of Finanz's assets, including its trademarks and any royalties related thereto, in order to secure a judgment in this case. As stated in the Attachment Order, all persons and entities who receive notice of the Attachment Order are enjoined and restrained from transferring any property in which Finanz has an interest, including the identified trademarks. These entities include, as identified by Disney: (1) Dana Classic Fragrances, Inc. ("Dana")—a beauty products manufacturer that uses the trademarks owned by Finanz; (2) IMG Holdings, Inc. ("IMG")—a holding company with a family

of companies, including Dana and Finanz; and (3) Patriarch Partners Agency Services, LLC ("Patriarch")—the entity that manages and oversees the operation of IMG's companies.[3]

### C. Undertaking

As required by CPLR Section 6212(b), Disney must provide an undertaking of at least $500. Because Disney has already prevailed on the merits in this action, I find that a large undertaking is unnecessary and conclude that $3,500 is appropriate. This amount constitutes one-half of a percentage of the attachment sought, which is consistent with amounts other courts have set in similar circumstances. *See, e.g., Herzi v. Ateliers De La Haute-Garonne*, 2015 WL 8479676, at *3 (S.D.N.Y. Oct. 13, 2015).

## III. Conclusion

Disney's motion to attach Finanz's assets is granted in the amount of $700,000 subject to Disney providing a $3,500 undertaking. As stated in detail in the Attachment Order, all persons and entities who receive notice of the Attachment Order, including Dana, IMG, and Patriarch, are

---

[3] Also present at the May 1, 2017 hearing was Jeannine Chanes, Esq., who sought to appear on behalf of Patriarch. She identified herself as representing "Patriarch Partners . . . as agent for certain secured creditors who have a perfected security interest in the property which Disney is seeking to attach." Transcript of May 1, 2017 conference at 2. Neither Disney nor Lowenstein had given notice to Patriarch of the hearing, from which the reasonable inference is that Finanz itself gave notice to Patriarch. Patriarch is not a party to this action, but Ms. Chanes sought an adjournment of the hearing so Patriarch could move to intervene in the action, which I denied. As discussed at the conference, to the extent other creditors have an interest in Finanz's property, then the priority of the various creditors will be determined at an appropriate time in an appropriate forum. In the meantime, for the reasons stated in the text, Disney's interest in Finanz's property needs to be protected.

enjoined and restrained from transferring any property in which Finanz has an interest, including the identified trademarks and any associated royalties.

SO ORDERED.

/s/ Nina Gershon
NINA GERSHON
United States District Judge

Dated: Brooklyn, New York
May 8, 2017