UNITED STATES DISTRICT COURT
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DISNEY ENTERPRISES, INC., | No. 13-CV-6338 (NG) (SMG) |
| Plaintiff, | |
| -against- | |
| FINANZ ST. HONORÉ, B.V., | |
| Defendant. | |

**PATRIARCH PARTNERS AGENCY SERVICES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS (A) MOTION TO INTERVENE, (B) APPLICATION TO DETERMINE ITS PRIORITY INTERESTS IN THE DANA COLLATERAL AND THE FINANZ COLLATERAL IN OPPOSITION TO DEI'S TURNOVER MOTION AND, (C) MOTION TO MODIFY THE MAY 1, 2017 ATTACHMENT ORDER**

Theresa Trzaskoma
Michael W. Gibaldi
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
ttrzaskoma@shertremonte.com
mgibaldi@shertremonte.com

*Attorneys for Intervenor Patriarch Partners Agency Services, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ...................................................................................................... 2

ARGUMENT ................................................................................................................................ 9

I.   AS AN ADVERSE CLAIMANT TO THE PROPERTY OF DANA AND FINANZ, PPAS HAS THE RIGHT TO INTERVENE IN THIS TURNOVER PROCEEDING ....... 9

II.  PPAS HAS STANDING TO ASSERT THE PROPERTY RIGHTS OF THE SENIOR SECURED LENDERS ................................................................................................... 10

III. THE ZOHAR FUNDS AND ARK II HAVE PRIORITY OVER THE DANA COLLATERAL AND FINANZ COLLATERAL ............................................................ 11

IV.  THE COURT SHOULD MODIFY THE MAY 1, 2017 ATTACHMENT ORDER ........ 13

CONCLUSION ........................................................................................................................... 14

# **TABLE OF AUTHORITIES**

## **CASES**

*Advanced Video Techs. LLC v. HTC Corp.*,
  No. 15-CV-4626 (CM), 2016 WL 3434819 (S.D.N.Y. June 14, 2016) ............................12–13

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*,
  262 F.R.D. 348 (S.D.N.Y. 2009) ..................................................................................................8

*Bank of India v. Weg & Myers, P.C.*,
  691 N.Y.S.2d 439 (N.Y. App. Div. 1999) ................................................................................12

*Bd. of Managers of the Horizon Condo. v. Glick Dev. Affiliates*,
  714 N.Y.S.2d 68 (N.Y. App. Div. 2000) ..................................................................................12

*DeFlora Lake Dev. Assocs., Inc. v. Hyde Park*,
  689 F. App'x 99 (2d Cir. 2017) ................................................................................................13

*Kamdem-Ouaffo v. Pepsico, Inc.*,
  314 F.R.D. 130 (S.D.N.Y. 2016) ................................................................................................8

*Kuruwa v. 130E. 18 Owners Corp.*,
  994 N.Y.S.2d 578 (N.Y. App. Div. 2014) ................................................................................12

*Mitchell v. Lyons Prof'l Servs., Inc.*,
  727 F. Supp. 2d 120 (E.D.N.Y. 2010) ......................................................................................11

*N. Mariana Islands v. Millard*,
  845 F. Supp. 2d 579 (S.D.N.Y. 2012)......................................................................................11

*Resner v. Greeley*,
  622 N.Y.S.2d 330 (N.Y. App. Div. 1995) ................................................................................12

*Sackman v. Liggett Grp., Inc.*,
  167 F.R.D. 6 (E.D.N.Y. 1996)....................................................................................................8

*S.E.C. v. v. Vuono*, No. 13-CV-405 (JFB),
  2013 WL 6837568 (E.D.N.Y. Dec. 26, 2013) .........................................................................11

*SK Glob. Am., Inc. v. John Roberts, Inc.*,
  778 N.Y.S.2d 5 (N.Y. App. Div. 2004) ....................................................................................12

*Sterling Nat'l Bank v. Goldberg*,
  715 N.Y.S.2d 409 (N.Y. App. Div. 2000) ................................................................................12

*Travelers Cas. & Sur. Co. of Am. v. Target Mech. Sys., Inc.*,
  800 N.Y.S.2d 358 (Table), 2004 WL 3050798 (N.Y. Sup. Ct. Dec. 30, 2004).......................13

*United States v. Pitney Bowes, Inc.*,
    25 F.3d 66 (2d Cir. 1994)..................................................................................................8

*U.S. ex rel. Solera Const., Inc. v. J.A. Jones Const. Grp., LLC*,
    No. 03-CV1383 (SFJ) (MDG), 2010 WL 1269938 (E.D.N.Y. Apr. 2, 2010)...................11–12

## **STATUTES**

Fed. R. Civ. P. 24..............................................................................................................................8

N.Y. C.P.L.R. 5225..........................................................................................................................8

N.Y. C.P.L.R. 5227..........................................................................................................................8

N.Y. C.P.L.R. 5239........................................................................................................................11

Patriarch Partners Agency Services, LLC ("PPAS"), as Administrative Agent for certain senior secured lenders, respectfully submits this Memorandum of Law in Support of its (A) Motion to Intervene, (B) Application to Determine the Priority of Its Interests in the Property of Non-Party Dana Classic Fragrances, Inc. ("Dana") and Defendant Finanz St. Honoré B.V. ("Finanz") in Opposition to the Turnover Motion filed by Plaintiff Disney Enterprises, Inc. ("DEI"), and (C) Motion to Modify the Attachment Order dated May 1, 2017.

## PRELIMINARY STATEMENT

It is indisputable that a creditor's perfected secured interest in a debtor's property takes priority over an unsecured judgment creditor. Although the procedural background of this case may be somewhat tortured, PPAS's motion ultimately involves a straightforward application of well-settled law.

In its most recent turnover motion, Plaintiff DEI seeks an order compelling non-party Dana to relinquish $1.2 million to satisfy DEI's judgment against Dana's affiliate, Finanz. But, as counsel for DEI has long known, Dana and Finanz are distressed companies with substantial senior secured debt owed to certain investment funds, that debt far exceeds the amount of its judgment against Finanz, and that debt is secured by all of Dana's own property and all the property of Finanz, which is a guarantor for Dana's debt. PPAS, as Administrative Agent for Dana's secured lenders, has perfected those secured interests by filing the requisite paperwork, including UCC financing statements, thereby providing notice to all third parties, including DEI, of its priority interests in Dana's and Finanz's property. Indeed, PPAS filed the earliest UCC-3 Financing Statement against Dana more than eleven years ago, in April 2007.

Although PPAS's superior interests in Dana's and Finanz's property have never been a secret, DEI has attempted to obscure PPAS's clear property rights in an improper effort to jump

to the front of the creditors' line. When PPAS appeared in this action to assert its senior secured interests in December 2017, DEI questioned PPAS's standing to assert the secured lenders' interests. As set forth below and in the accompanying Declaration of Lynn Tilton, however, PPAS has acted as the Administrative Agent for the secured lenders pursuant to the credit agreement from 2007 to present; no other party has ever performed those duties and obligations. Moreover, there has never been any dispute regarding PPAS's authority to act on behalf Ark II, Dana's secured lender with the first payment priority.

PPAS does not dispute that DEI has a judgment against Finanz. But Dana and Finanz owe the secured lenders more than [Redacted] – many times more than the amount of DEI's unsecured judgment – and according to the most basic principles of secured transactions, a preexisting, perfected security interest in collateral has and always will have priority over an unsecured judgment creditor that later asserts an interest in the same property. Put simply, DEI's collection efforts must yield to PPAS's longstanding superior interest in the same property. DEI's charge of "gamesmanship" is merely dissatisfaction with the law of secured transactions.

## FACTUAL BACKGROUND

*The Secured Loans to Dana Classic Fragrances*

On or about June 28, 2007, Dana and two affiliates[1] (collectively, the "Borrowers") entered into a loan and security agreement with two investment funds: Zohar II 2005-1, Limited and Zohar CDO 2003-1 Limited. By later amendment, another collateral loan obligation fund, Zohar III, Limited, became an additional lender under the loan agreement.[2] (*See* Tilton Decl. ¶ 3.) On or about January 15, 2009, the parties entered into a Third Amended and Restated Loan

---

[1] Inter-Marketing Group, Inc. and Dana S.A.U.

[2] This memorandum refers to Zohar CDO 2003-1 Limited; Zohar II 2005-1, Limited; and Zohar III, Limited collectively as the "Zohar Funds."

2

and Security Agreement (the "Credit Agreement"). (*See id.* ¶ 4 & Ex. A.) The Credit Agreement was amended from time to time, most recently on February 5, 2016. The February 5, 2016 amendment added a loan from another fund: Ark II CLO 2001-1, Limited ("Ark II"). (*See id.* ¶ 5 & Ex. B.)

As a primary obligor, Dana pledged all of its assets as security for the loans under the Credit Agreement (the "Dana Collateral"). Finanz joined the Credit Agreement as a guarantor of the Borrowers' debts, and separately pledged all of its assets as additional security for the loans under the Credit Agreement (the "Finanz Collateral," and together with the Dana Collateral, the "Collateral"). (Tilton Decl. ¶¶ 6–7.)

In accordance with the Credit Agreement, PPAS has served without interruption as the Administrative Agent for Dana's secured lenders since 2007 – first the Zohar Funds and later Ark II. (Tilton Decl. ¶¶ 16, 21–22.) In its capacity as Administrative Agent, PPAS has the absolute duty and authority to perform, exercise, and enforce all rights with respect to the Collateral. (*See id.* ¶ 2 & Ex. A at ¶ 16.1.) As part of its duties, PPAS perfected the lenders' secured interests in the Collateral by filing the requisite UCC financing statements in or about April 2007 and by filing continuation statements in May 2009 and May 2014.[3] (*See id.* ¶¶ 8–10 & Exs. C–D.) PPAS also executed Deposit Account Control Agreements ("DACAs") for each of Dana's bank accounts with Dana, Dana's affiliates, and Dana's banks pursuant to UCC Article 9. (*See id.* ¶ 9 & Ex. C.) Finally, PPAS entered into separate agreements with Finanz, by which Finanz assigned security interests in its intellectual property to PPAS (the "IP Assignments"). (*See id.* ¶ 11 & Exs. E–G.) PPAS filed the IP Assignments with the United States Patent and

---

[3] The Collateral had been subject to a secured lender's security interest even before 2007. As the UCC financing statements reflect, on April 27, 2007, CapitalSource Finance LLC assigned its continuing security interests in and to all of Dana's and Finanz's present and future collateral to PPAS. (*See* Tilton Decl., Exs. C–D.)

3

Trademark Office and the United States Copyright Office in or about August 2007. (*See id.* ¶ 12 & Ex. H.) Because PPAS serves as Administrative Agent for the lenders, the UCC Financing Statements and IP Assignments list "Patriarch Partners Agency Services, LLC, as Agent" as the entity that holds secured interests in the Collateral.

As of October 10, 2018, the Borrowers owe approximately [Redacted] to the Zohar Funds and [Redacted] to Ark II. (*See* Tilton Decl. ¶ 13.)

***The SDNY Action and Bankruptcy Proceedings***

In or about June 2016, Alvarez & Marsal Zohar Management, LLC ("AMZM"), the collateral manager for the Zohar Funds at the time, sought to remove PPAS as Administrative Agent for the Zohar Funds. (Tilton Decl. ¶ 14.) PPAS rejected the termination as improper and invalid, and commenced a civil action captioned *Patriarch Partners Agency Services, LLC v. Zohar CDO 2003-1, Ltd., et al.*, No. 16-CV-04488 (VM) (KHP) (S.D.N.Y.) (the "SDNY Action"), in which PPAS sought, *inter alia*, a declaration that AMZM's actions were unlawful, null and void, and of no legal effect.[4] (*Id.* ¶ 15.) Significantly for purposes of the present motion, PPAS continued to serve as Administrative Agent for the Zohar Funds during the pendency of the SDNY Action. (*See id.* ¶ 16.) This is evidenced by an October 9, 2017 letter filed in the SDNY Action, in which AMZM acknowledged "the Court's instruction that PPAS be treated as Agent during the pendency of the litigation." *See* Letter from Elizabeth A. LaPuma to Lynn Tilton at 1 n.1, Oct. 9, 2017, *Patriarch Partners Agency Services, LLC v. Zohar CDO 2003-1, Ltd., et al.*, No. 16-CV-4488 (VM) (KHP) (S.D.N.Y. Nov. 27, 2017), ECF No. 162-6.

---

[4] The existence of disputes between PPAS and the Zohar Funds refutes DEI's allegation that PPAS, Patriarch Partners LLC, Lynn Tilton, and the secured lenders have been conspiring to "to block DEI's recovery on the grounds that the loan Finanz guaranteed is underwater and the Lenders, which were also PPAS affiliates, are senior secured creditors." DEI Mem. in Opp'n to PPAS Mot. to Intervene at 2, ECF No. 111. PPAS is opposing DEI's collection efforts not out of any self-interest but because it has an affirmative obligation to protect the interests of the secured lenders. There is nothing nefarious about PPAS's efforts.

4

Moreover, PPAS's authority to act as the Administrative Agent for Ark II *has never been disputed in either the SDNY Action or in the Bankruptcy Cases discussed below*. (*See* Tilton Decl. ¶ 21.) Nor could it be, as the Zohar Funds have no interest in Ark II.

On March 11, 2018 (the "Petition Date"), each of the Zohar Funds filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Cases"). By entry of the orders for relief in the Bankruptcy Cases, which are being jointly administered, the SDNY Action was stayed. *See* Notice of Commencement of Ch. 11 Cases & Automatic Stay, *Patriarch Partners Agency Services, LLC v. Zohar CDO 2003-1, Ltd., et al.*, No. 16-CV-4488 (VM) (KHP) (S.D.N.Y. Mar. 12, 2018), ECF No. 202. Since the Petition Date, no party has sought to lift the stay in the SDNY Action. (*See* Tilton Decl. ¶¶ 17–18.)

In April 2018, the Zohar Funds and other major stakeholders in the Bankruptcy Cases, including PPAS, reached a global settlement that, among other things, addresses PPAS's continuing authority to act as Administrative Agent for the Zohar Funds. (*See* Tilton Decl. ¶¶ 19–20 & Ex. I.) Specifically, the Settlement Agreement provides that: (i) PPAS will continue to act as Administrative Agent for the Zohar Funds until a new agent is appointed by the Court-appointed Independent Director and Chief Restructuring Officer ("CRO") for the Zohar Funds; and (ii) PPAS has irrevocable authority to act as Administrative Agent for all non-Zohar Funds, such as Ark II. (*See id.* ¶ 20 & Ex. I at ¶ 6.[5]) In other words, the Settlement Agreement is clear that PPAS has the authority to act as Administrative Agent for the Zohar Funds until the CRO

---

[5] The Settlement Agreement provides, in relevant part: "The Independent Director/CRO shall appoint a new independent administrative agent under the Zohar credit agreements (the 'New Agent') who shall report only to the Independent Director/CRO and U.S. Bank; provided, (a) that PPAS remains the administrative agent under the Zohar credit agreements for all purposes related to the Patriarch Stakeholders and any other third party. . . . PPAS, the Independent Director/CRO, and the New Agent shall use reasonable efforts to transition existing Zohar-related PPAS matters to the new agent." (*See* Tilton Decl., Ex. I at ¶ 6.)

5

appoints a new administrative agent and that agent commences the agency functions. Further, the Settlement Agreement does not alter PPAS's undisputed authority with respect to Ark II's loans, and it in fact expressly provides that "PPAS remains the administrative agent under the Zohar credit agreements for all purposes related to the Patriarch Stakeholders and any other third party" – including the Ark II loan under the Credit Agreement. (*See* Tilton Decl., Ex. I at ¶ 6.) Ark II is explicitly included as a "Patriarch Stakeholder" in the Settlement Agreement. (*See id.* at Ex. B.)

The Settlement Agreement was approved by final order of the Bankruptcy Court on May 21, 2018. (*See id.*)

To date, the Bankruptcy Court has appointed an Independent Director and a CRO. *See* Order Appointing Independent Director, *In re Zohar III, Corp., et al.*, No. 18-10512-CSS (Bankr. D. Del. May 21, 2018), ECF No. 267; Order Approving Agreement with FTI Consulting, *In re Zohar III, Corp., et al.*, No. 18-10512-CSS (Bankr. D. Del. June 11, 2018), ECF No. 297. However, the Zohar administrative agency functions have not yet been transitioned to a new agent, and PPAS has continued to perform all administrative agent duties and obligations for both the Zohar Funds and Ark II. Indeed, under the Settlement Agreement, PPAS is obligated to "use commercially reasonable efforts to take all reasonable actions to ensure the continued validity and perfection of any security interests and liens for loans transferred to the New Agent." (*See* Tilton Decl., Ex. I at ¶ 6.) Accordingly, at present, PPAS has the unquestionable authority to act as Administrative Agent for the Zohar Funds. (*See* Tilton Decl. ¶ 22.)

***The Finanz Litigations***

As the Court is well aware, in 2007 Dana, Finanz, and DEI became embroiled in litigation over the TINKERBELL® trademark, which Finanz had licensed to Icebox-Scoops, Inc.,

6

and had subsequently sold to DEI.[6] In this follow-on action, which DEI commenced in 2013 – approximately six years after PPAS had perfected its security interests in the Collateral – DEI claimed that an indemnity agreement obligated Finanz to pay DEI's legal fees in connection with the Icebox litigation. Finanz retained Lowenstein Sandler LLP as counsel and "took the position that its indemnification obligations had expired on February 23, 2012," *i.e.*, six years after the execution of its indemnity agreement. *See* Op. & Order at 5, ECF No. 62. The issue before the Court was one of contract interpretation, and DEI ultimately prevailed. *See id.* at 6–15.

Shortly after the Court granted summary judgment to DEI as to liability, on March 20, 2017, the Court permitted Lowenstein Sandler LLP to withdraw as counsel on the basis that Finanz had not been able to pay its legal bills since July 2016. *See* Mot. to Withdraw, ECF No. 67; Order, ECF No. 84. Because it could not retain new counsel, Finanz defaulted, and the Court entered judgment against Finanz. *See* Judgment, ECF No. 110.

*PPAS's Intervention*

PPAS first appeared in this action on May 1, 2017, as soon as it became apparent that the Court was contemplating an attachment order that would impair PPAS's rights in the Finanz Collateral. *See* Minute Entry, May 1, 2017. Shortly thereafter, PPAS filed formal motion papers, including documentation establishing its priority security interests in the Dana Collateral and Finanz Collateral.

As this Court noted in its May 8, 2017 opinion granting the May 1, 2017 Order of Attachment, Finanz had long been "in a tenuous financial state." Op. & Order at 4, ECF No. 80. Thus, contrary to DEI's unsubstantiated accusations of gamesmanship, DEI has known for a long

---

[6] *See Icebox-Scoops, Inc. v. Finanz St. Honoré, B.V. & Dana Classic Fragrances, Inc.*, No. 07-CV-0544 (NG) (SMG) (E.D.N.Y.); *Icebox-Scoops, Inc. v. Disney Enterprises, Inc. & Walt Disney Co.*, No. 10-CV-00421 (NG) (SMG) (E.D.N.Y.); *Disney Enterprises, Inc. v. Finanz St. Honoré, B.V.*, No. 13-CV-6338 (NG) (SMG) (E.D.N.Y.).

7

time – at least since PPAS moved to intervene in this case and probably much longer – that any efforts to collect a judgment in this case would be futile in light of PPAS's superior interests in the Collateral.

Nevertheless, DEI has persisted in extensive, costly, and highly inefficient post-judgment litigation, such that DEI has now incurred legal fees significantly in excess of the value of its original judgment. Since PPAS first appeared in this case in May 2017, DEI has fought at every turn to delay the ultimate determination of PPAS's priority interests in the Collateral. DEI opposed PPAS's first motion to intervene filed in 2017, while conceding that PPAS must have the right to be heard on its priority claim to the Collateral at some point in the future. *See* Tr. of Dec. 11, 2017 Hearing at 19:24 – 20:1 (conceding that, upon filing of a turnover motion, "that would be the time when any adverse claimant would be able to proceed in this court by a motion to have their purported senior interests determined"). Thereafter, DEI filed its first motion for turnover with respect to the Finanz Collateral on February 16, 2018, but contrary to its representations to the Court in December 2017, inexplicably gave PPAS *no notice of its motion*. *See* DEI Letter dated Apr. 17, 2018, ECF No. 131 (conceding that PPAS had no notice of the motion). DEI then waited an additional six months before filing this second motion for turnover against non-judgment debtor Dana.

In short, PPAS was ready to assert its priority interests in the Collateral as soon as the Collateral was threatened to become impaired by DEI's judgment. To the extent DEI would complain of any delay and unfairness in this process, it must itself shoulder the blame.

8

# ARGUMENT

## I. AS AN ADVERSE CLAIMANT TO THE PROPERTY OF DANA AND FINANZ, PPAS HAS THE RIGHT TO INTERVENE IN THIS TURNOVER PROCEEDING

"Intervention as of right under Rule 24(a)(2) is granted when an applicant: (1) files a timely motion; (2) asserts an interest relating to the property or transaction that is the subject of the action; (3) is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) has an interest not adequately represented by the other parties." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994); *see* Fed. R. Civ. P. 24(a)(2). Like the standard of review of a motion to dismiss made under Rule 12(b), "[c]ourts applying Rule 24 'accept as true the non-conclusory allegations of the motion'" in assessing these requirements. *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 348, 352 (S.D.N.Y. 2009) (quoting *Arista Records, Inc. v. Dalaba Color Copy Ctr., Inc.*, No. 05-CV-3634, 2007 WL 749737, at *3 (E.D.N.Y. Mar. 7, 2007)); *see, e.g.*, *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016); *Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 20 (E.D.N.Y. 1996).

A court must permit a party to intervene where, as here, the putative intervenor seeks to assert its priority interest in property that has become the subject of a turnover motion. Both N.Y. C.P.L.R. 5225(b) and 5227, upon which DEI relies, explicitly provide for "any adverse claimant to intervene in the proceeding" so that the Court "may determine his rights in accordance with section 5239." N.Y. C.P.L.R. 5225(b), 5227. Indeed, this Court has previously recognized that PPAS must be permitted to intervene and litigate the priority of its property rights upon DEI filing a turnover motion:

> To be sure, the priority of creditors must be determined at some point. As Disney indicated at oral argument and reinforced in its letter, it intends to make a motion for a turnover and to appoint a receiver. I conclude, and PPAS appears to agree, that the appropriate

> time for PPAS to litigate whether its interest is superior to that of
> Disney's is at such a proceeding.

See Op. & Order at 4, ECF No. 125. Even DEI concedes that PPAS must be permitted to intervene at this juncture. See Tr. of Dec. 11, 2017 Hearing at 19:24 – 20:1 (conceding that, upon filing of a turnover motion, "that would be the time when any adverse claimant would be able to proceed in this court by a motion to have their purported senior interests determined"). Now that the Dana Collateral is the subject of a turnover motion, PPAS must be permitted to intervene to protect the secured lenders' priority interest in that property.

## II. PPAS HAS STANDING TO ASSERT THE PROPERTY RIGHTS OF THE SENIOR SECURED LENDERS

In an effort to jump to the front of the creditors' line, DEI has injected confusion into this case by questioning PPAS's continuing authority to act as Administrative Agent for the Zohar Funds and Ark II. DEI's position lacks any merit and reflects a deep misunderstanding concerning the ongoing relationship between PPAS and the secured lenders.

As an initial matter, no one – not even DEI – has ever challenged PPAS's continuing authority to act as Administrative Agent *for Ark II*. The Borrowers' obligation to pay more than [Redacted] to Ark II is secured by the Collateral just as their debt to the Zohar Funds is secured by the Collateral. Thus, because PPAS is charged with enforcing Ark II's property rights, PPAS clearly has standing to oppose DEI's turnover motion. (*See* Tilton Decl. ¶ 21.)

Additionally, with respect to the Zohar Funds, not even the Zohar Funds themselves have ever questioned PPAS's continuing authority to act as their Administrative Agent. *See* Letter from Elizabeth A. LaPuma to Lynn Tilton at 1 n.1, Oct. 9, 2017, *Patriarch Partners Agency Services, LLC v. Zohar CDO 2003-1, Ltd., et al.*, No. 16-CV-4488 (VM) (KHP) (S.D.N.Y. Nov. 27, 2017), ECF No. 162-6 (acknowledging "the Court's instruction that PPAS be treated as Agent during the pendency of the litigation"). In any event, now that the dispute between PPAS

10

and the Zohar Funds has been resolved in the course of the Bankruptcy Proceedings, there can be no doubt that PPAS currently has the continuing authority to act as Administrative Agent for the Zohar Funds. A new agent has not yet assumed the Zohar administrative agent functions, and until one does, no one else but PPAS could conceivably step in to protect the secured lenders' interests. In fact, the Settlement Agreement requires PPAS to "use commercially reasonable efforts to take all reasonable actions to ensure the continued validity and perfection of any security interests and liens for loans transferred to the New Agent." (*See* Tilton Decl., Ex. I at ¶ 6.)

### III. THE ZOHAR FUNDS AND ARK II HAVE PRIORITY OVER THE DANA COLLATERAL AND FINANZ COLLATERAL

Under New York law, "[p]rior to the application of property or debt by a sheriff or receiver to the satisfaction of a judgment, any interested person may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt. . . . The court may vacate the execution or order, void the levy, direct the disposition of the property or debt, or direct that damages be awarded." N.Y. C.P.L.R. 5239.[7] A motion brought under N.Y. C.P.L.R. 5239 is "the path to the courthouse to a claimant who wants to have a priority or lien or other dispute with another claimant ironed out." *S.E.C. v. v. Vuono*, No. 13-CV-405 (JFB), 2013 WL 6837568, at *3 n.3 (E.D.N.Y. Dec. 26, 2013) (internal quotation marks and citation omitted).

Here, it is beyond dispute that a secured creditor's perfected, secured interest in property has priority over any unsecured money judgment. *See, e.g.*, *U.S. ex rel. Solera Const., Inc. v. J.A.*

---

[7]    Because a "special proceeding" is a creature of New York practice with no federal analogue, "[n]early every court in this Circuit to consider the issue has held that parties can bring a motion under FRCP 69(a), rather than instituting a special proceeding under the New York state law." *N. Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 581 (S.D.N.Y. 2012) (citing cases); *see, e.g.*, *Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120, 122–23 (E.D.N.Y. 2010).

*Jones Const. Grp., LLC*, No. 03-CV1383 (SFJ) (MDG), 2010 WL 1269938, at *5 (E.D.N.Y. Apr. 2, 2010); *Kuruwa v. 130E. 18 Owners Corp.*, 994 N.Y.S.2d 578, 579 (N.Y. App. Div. 2014); *Bd. of Managers of the Horizon Condo. v. Glick Dev. Affiliates*, 714 N.Y.S.2d 68, 69 (N.Y. App. Div. 2000); *Resner v. Greeley*, 622 N.Y.S.2d 330, 331 (N.Y. App. Div. 1995). Indeed, because a secured creditor's perfected, secured interest in property has priority over any unsecured money judgment, an unsecured judgment creditor's exercise of dominion over property subject to another's priority secured interest constitutes the tort of conversion under New York law. *See, e.g.*, *SK Glob. Am., Inc. v. John Roberts, Inc.*, 778 N.Y.S.2d 5, 6–7 (N.Y. App. Div. 2004); *Sterling Nat'l Bank v. Goldberg*, 715 N.Y.S.2d 409, 411 (N.Y. App. Div. 2000); *Bank of India v. Weg & Myers, P.C.*, 691 N.Y.S.2d 439, 444–45 (N.Y. App. Div. 1999).

This fundamental principle of secured transactions resolves DEI's current motion. The Zohar Funds and Ark II are owed more than [Redacted], and that debt is secured by both the Dana Collateral and the Finanz Collateral. PPAS, acting in its capacity as Administrative Agent, has perfected the lenders' secured interests in that property by making the requisite UCC filings beginning in 2007.

PPAS's secured interests in the Collateral preclude turnover of any of Dana's assets to DEI. *First*, PPAS has a direct, secured interest in the Dana Collateral, which includes the property that DEI seeks to turnover to satisfy its judgment against Finanz. *Second*, apart from PPAS's secured interest in the Dana Collateral, PPAS's secured interest in the Finanz Collateral includes any receivables owed by Dana to Finanz. This priority interest covers any amount that Dana might owe to Finanz. *See, e.g.*, *Advanced Video Techs. LLC v. HTC Corp.*, No. 15-CV-4626 (CM), 2016 WL 3434819, at *3 (S.D.N.Y. June 14, 2016) (holding that "a secured interest in inventory or receivables typically reaches after-acquired property – otherwise the flow of

12

inventory out would quickly turn a secured interest into an unsecured interest"), *aff'd*, 879 F.3d 1314 (Fed. Cir. 2018). Under these circumstances, the Court cannot order turnover of Dana's property to an unsecured judgment creditor like DEI unless and until the debts to the Zohar Funds and Ark II are fully satisfied. *See, e.g.*, *Travelers Cas. & Sur. Co. of Am. v. Target Mech. Sys., Inc.*, 800 N.Y.S.2d 358 (Table), 2004 WL 3050798 (N.Y. Sup. Ct. Dec. 30, 2004) (vacating execution levy served by judgment creditor under N.Y. C.P.L.R. 5239, where other creditor had "prior security interest" in the subject property).

Finally, it is not even clear that DEI has established that Dana is in possession of property in which Finanz has an interest. Citing to Dana's garnishee statement dated October 19, 2017, DEI has asserted that Dana owes Finanz $3,578,000. But the garnishee statement does not support DEI's position; to the contrary, the statement reflects that Dana's debts to Finanz are completely offset by Finanz's debts to Dana, such that Finanz actually owes Dana $4,394,000.[8]

## IV. THE COURT SHOULD MODIFY THE MAY 1, 2017 ATTACHMENT ORDER

On May 1, 2017, this Court entered an Attachment Order that provides, in relevant part:

> that Defendant, its agents, employees, attorneys, affiliated entities, including without limitation Dana Classic Fragrances, Inc., IMG Holdings, Inc., and Patriarch Partners LLC and all persons in possession of property in which Finanz has an interest, and all persons in active concert or participation with any of the foregoing, and all persons who receive actual notice of this Order by personal service or otherwise, are hereby ENJOINED AND RESTRAINED, from directly or indirectly transferring, requesting, or directing the transfer of any such property on deposit with them or held under their control, including the Trademarks and any royalties generated therefrom and owed to Finanz.

---

[8] "The common law right of setoff, codified by [N.Y. Debt. & Cred. Law] § 151, 'allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A.'" *DeFlora Lake Dev. Assocs., Inc. v. Hyde Park*, 689 F. App'x 99, 100–01 (2d Cir. 2017) (quoting *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995)). Based on the garnishee statements, Dana has a statutory right of setoff, such that Finanz has absolutely no interest in any of Dana's property.

13

Order at 5, ECF No. 78. In a subsequent opinion dated May 8, 2017, the Court clarified that the Attachment Order binds "Patriarch Partners Agency Services, LLC." *See* Op. & Order at 6–7, ECF No. 80.

The Court's Attachment Order interferes with the secured lenders' rights and ability, through PPAS, to take appropriate actions with respect to the Collateral. As PPAS's rights in the Collateral are superior to DEI's unsecured money judgment, it follows that the Court should modify the May 1, 2017 Attachment Order to make clear that PPAS and the secured lenders are permitted to enforce their rights under the Credit Agreement with respect to the Collateral, including the right to declare a default and foreclose on the property.

## CONCLUSION

For the foregoing reasons, the Court should grant PPAS's motion to intervene in this action, determine that PPAS's secured interests in the Collateral take priority over DEI's unsecured judgment, modify the May 1, 2017 Attachment Order, and award such other further and additional relief as the Court deems proper.

Dated: New York, New York
October 12, 2018

                SHER TREMONTE LLP

                By: */s/ Michael W. Gibaldi*
                    Theresa Trzaskoma
                    Michael W. Gibaldi

                90 Broad Street, 23rd Floor
                New York, New York 10004
                Tel: (212) 202-2600
                Fax: (212) 202-4156
                ttrzaskoma@shertremonte.com
                mgibaldi@shertremonte.com

                *Attorneys for Intervenor Patriarch Partners Agency Services, LLC*