UNITED STATES DISTRICT COURT
**EASTERN DISTRICT OF NEW YORK**

DISNEY ENTERPRISES, INC.,

                Plaintiff,

-against-

FINANZ ST. HONORÉ, B.V.,

                Defendant.

No. 13-CV-6338 (NG) (SMG)

**DECLARATION OF LYNN TILTON**

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1.      I am the sole Manager of Patriarch Partners Agency Services, LLC ("PPAS"). Except as otherwise noted, I have personal knowledge of the facts recited herein.

2.      PPAS is a Delaware limited liability company with offices in New York. PPAS serves as Administrative Agent to certain secured lenders under various loan agreements. PPAS's duties and obligations as Administrative Agent are expressly set forth in the various loan agreements, but generally include the following: issuing invoices, collecting interest and principal payments, forwarding such payments as appropriate to the secured lenders under such loan agreements, and protecting the lenders' interests in the loan collateral by, among other things, taking such actions to protect and perfect the lenders' liens and security interests.

*The Credit Agreements*

3.      On or about June 28, 2007, Dana Classic Fragrances, Inc., Inter-Marketing Group, Inc. and Dana S.A.U. (collectively, the "Borrowers") entered into a Second Amended and Restated Loan and Security Agreement ("Second Amended Loan Agreement") with two collateralized loan obligation funds: Zohar CDO 2003-1 Limited and Zohar II 2005-1, Limited. PPAS is a party to the Second Amended Loan Agreement as Administrative Agent. By later

amendment in July 2008, another collateralized loan obligation fund, Zohar III, Limited (together with Zohar CDO 2003-1 Limited and Zohar II 2005-1, the "Zohar Funds"), also became a secured lender under the Second Amended Loan Agreement.

4. On or about January 31, 2009, the Borrowers entered into a Third Amended and Restated Loan and Security Agreement (the "Credit Agreement") with the Zohar Funds as secured lenders and PPAS serving as Administrative Agent. Attached hereto as **Exhibit A** is a true and correct copy of the Credit Agreement.

5. From time to time, the Credit Agreement was amended, most recently on February 5, 2016, by Amendment No. 18 to the Third Amended and Restated Loan and Security Agreement ("Amendment 18"). Pursuant to Amendment 18, another investment fund, Ark II CLO 2001-1, Limited ("Ark II"), agreed to make loans to the Borrowers that would also be administered by PPAS. Attached hereto as **Exhibit B** is a true and correct copy of Amendment No. 18. Ark II has a first payment priority under the Credit Agreement. (*See* Ex. B at 12–13.)

6. As one of the primary obligors under the Credit Agreement, Dana Classic Fragrances, Inc. ("Dana") has pledged all its assets, including cash, as security for the loans (the "Dana Collateral").

7. Finanz St. Honoré, B.V. ("Finanz") is a guarantor of Dana's obligations under the Credit Agreement and also has pledged all its assets as security for the loans (the "Finanz Collateral"). As described in more detail below, the Finanz Collateral consists almost entirely of intellectual property.

8. Consistent with its duties and obligations under the Credit Agreement to act as Administrative Agent for the Zohar Funds and Ark II, PPAS has perfected the lenders' security interests in, among other things, the Dana Collateral and the Finanz Collateral by filing UCC financing statements.

9. Specifically, on or about April 27, 2007, PPAS filed a UCC-3 financing statement noticing its security interests in the Dana Collateral, and thereafter filed continuation statements on or about May 7, 2009, and May 5, 2014. In addition, PPAS executed Deposit Account Control Agreements ("DACAs") for each of Dana's bank accounts with Dana, Dana's affiliates, and Dana's banks. Attached hereto as **Exhibit C** are true and correct copies of UCC financing statements and DACAs perfecting PPAS's security interests in the Dana Collateral.

10. On or about April 27, 2007, PPAS filed a UCC-3 financing statement noticing its security interests in the Finanz Collateral, and thereafter filed continuation statements on or about May 8, 2009, and May 5, 2014. Attached hereto as **Exhibit D** are true and correct copies of UCC financing statements perfecting PPAS's security interests in the Finanz Collateral.

11. At the time it entered into the Credit Agreement as a guarantor of Dana's debt, Finanz's primary assets were intellectual property rights – trademarks, copyrights, and patents. Accordingly, as required by the Credit Agreement, Finanz assigned security interests in its intellectual property to PPAS by separate agreements (the "IP Assignments"). Attached hereto as **Exhibits E, F, and G** are true and accurate copies of the IP Assignments.

12. PPAS filed the IP Assignments with the United States Patent and Trademark Office ("USPTO") and the United States Copyright Office ("USCO") in or about August 2007. Attached hereto as **Exhibit H** are true and correct copies of the USPTO and USCO filings with respect to the IP Assignments.

13. At present, the Borrowers (including Dana) owe approximately [Redacted] to the Zohar Funds and [Redacted] to Ark II.

***PPAS's Continuing Authority as Administrative Agent***

14. On or about June 2016, the then-collateral manager for the Zohar Funds, Alvarez & Marsal Zohar Management, LLC ("AMZM"), purported to remove PPAS as Administrative Agent for the Zohar Funds.

15. PPAS rejected this purported removal as improper and invalid, as PPAS' appointment as Administrative Agent was irrevocable. PPAS then commenced a civil action captioned *Patriarch Partners Agency Services, LLC v. Zohar CDO 2003-1, Ltd., et al.*, No. 16-CV-04488 (VM) (KHP) (S.D.N.Y.) (the "SDNY Action"), in which PPAS sought a declaration that AMZM's actions were unlawful, null and void, and of no legal effect.

16. PPAS continued to fully perform its obligations as Administrative Agent during the pendency of the SDNY Action. At no time since the SDNY Action was filed have the Zohar Funds disputed PPAS's authority to act as Administrative Agent, and no other entity has performed the functions of Administrative Agent during the pendency of the case.

17. On or about March 11, 2018 (the "Petition Date"), each of the Zohar Funds filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Cases").

18. As a result of the filing of the Bankruptcy Cases, the SDNY Action was automatically stayed. Since the Petition Date, no party has sought to lift the automatic stay with respect to the SDNY Action.

19.     In any event, the dispute in the SDNY Action regarding PPAS's authority to act as Administrative Agent for the Zohar Funds has been finally resolved as part of the Bankruptcy Cases.

20.     Specifically, in a settlement agreement approved by final order of the Bankruptcy Court, the "Patriarch Stakeholders" (including PPAS) and the Zohar Funds agreed, among other things, that: (i) PPAS will continue to act as Administrative Agent for the Zohar Funds until a new agent is appointed by the Court-appointed Independent Director and Chief Restructuring Officer ("CRO") for the Zohar Funds, and (ii) PPAS has irrevocable authority to act as Administrative Agent for all non-Zohar Funds, such as Ark II. Attached hereto as **Exhibit I** is a true and correct copy of the Bankruptcy Court's Order Approving Settlement and the Settlement Agreement.

21.     PPAS has continuously served as the irrevocable Administrative Agent for Ark II pursuant to the Credit Agreement and will continue to do so even when a new agent takes over such functions for the Zohar Funds. Throughout PPAS's dispute with the Zohar Funds, PPAS's authority to act as Administrative Agent for Ark II has never been questioned, nor could it be, as the Zohar Funds have no interest in Ark II.

22.     As of the date of this Declaration, a new Administrative Agent has not yet begun acting on behalf of the Zohar Funds. Until that transition occurs, PPAS will continue to perform all administrative agent functions in connection with loans made by the Zohar Funds, including the loans made to the Borrowers under the Credit Agreement.

*PPAS's Intervention*

23. On May 1, 2017, PPAS appeared in the above-captioned case in order to preserve both the Zohar Funds' and Ark II's interests in the Finanz Collateral. Specifically, PPAS sought to challenge the Attachment Order entered by this Court on May 1, 2017, on the basis that the secured lenders' interests in the Finanz Collateral was senior to all other interests. On July 31, 2017, PPAS filed formal motion papers setting forth the lenders' superior secured interest in the Finanz Collateral. As part of this filing, PPAS submitted the UCC-3 Financing Statements reflecting the lenders' superior interests in both the Dana Collateral and the Finanz Collateral.

24. PPAS is now appearing as Administrative Agent for both the Zohar Funds and Ark II to oppose the turnover of property in which these funds have a superior perfected security interest.

25. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _10_ day of October, 2018

_____
Lynn Tilton

7